[No. 66755-6-I.  Division One.  September 17, 2012.]

WELLMAN & ZUCK, INC., *Plaintiff*, OREGON MUTUAL INSURANCE COMPANY, *Appellant*, v. HARTFORD FIRE INSURANCE COMPANY, *Respondent*.

*Gary A. Sparling* (of *Soha & Lang PS*), for appellant.

*Martin J. Pujolar* and *John P. Hayes* (of *Forsberg & Umlauf PS*), for respondent.

¶1 LEACH, C.J. — Oregon Mutual Insurance Company appeals a trial court's summary dismissal of its lawsuit against Hartford Fire Insurance Company, which asserted claims based on Hartford's refusal to defend two underlying lawsuits. A lawsuit triggers an insurer's duty to defend if the insurance policy between the insurer and insured

conceivably covers the complaint's allegations.[1] Because no conceivable interpretation of the complaints in the lawsuits at issue here could have triggered Hartford's obligations under its policy with the insured, we affirm.

## FACTS

¶2 This matter arises from two underlying lawsuits involving the construction of the Olympic Condominiums in Bellingham: *Buchholz v. Wellman & Zuck, Inc.*, and *State Farm Fire & Casualty Co. v. Wellman & Zuck, Inc.*

¶3 Appellant Oregon Mutual is the assignee of Wellman & Zuck Inc., which acted as the general contractor on the condominium project. As part of the project, Wellman subcontracted with Otis Elevator Company to install an elevator. At Otis's request, respondent and cross appellant Hartford issued a specialized owners and contractors protective (OCP) policy to Wellman as the named insured. The OCP policy applies to claims for "property damages" caused by an "occurrence" arising from operations performed by Otis for Wellman. The OCP policy covered the period from October 1, 1995, to October 1, 1996. Construction of the condominiums lasted from 1995 until 1999.

¶4 In January 2002, the condominium developer filed the *Buchholz* lawsuit, alleging that Wellman breached the construction contract by failing to provide defect-free work, and "as a direct and proximate result . . . the condominiums and common spaces therein have suffered severe and significant water damage which require repair." Exterior Research & Design (ERD) investigated the condominiums for construction defects and associated damages. ERD's report, issued in November 2002, describes no defect allegations, damages, or repair recommendations related to the elevator installation.

¶5 In January 2003, one year after the *Buchholz* lawsuit was filed, Wellman's attorney, Frank Chmelik, tendered its

---

[1] *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52-53, 164 P.3d 454 (2007).

defense to Hartford. Four months later, Hartford declined this tender.[2] Meanwhile, several condominium owners intervened in the *Buchholz* litigation and asserted third party claims against the developer. The developer's insurer, State Farm Fire & Casualty Company, defended and settled those claims. In July 2003, State Farm sued Wellman to recover the full settlement amount. The *State Farm* complaint alleged "substantial defects in the work performed by Wellman & Zuck, Inc. in the construction of the Olympic Condominium" and asserted the *Buchholz* litigation was based on "damages arising from the construction, marketing and sale of units, limited common areas and common areas" of the condominiums.

¶6 In August 2004, Wellman tendered the *State Farm* defense to Hartford, noting that State Farm's claim was "distinct from" but "related to and involves the same underlying facts as the previous notice of claim." Hartford also declined to defend the *State Farm* litigation. Chmelik responded with a second letter, informing Hartford that Wellman believed its failure to defend constituted bad faith. The letter reiterated that the damages alleged in the *State Farm* complaint included "water intrusion and resulting water damage, and other damage" and offered to provide Hartford with documentation, including ERD's report. Hartford did not respond to this letter.

---

[2] In a letter to Chmelik, Hartford explained its position:

> The claims against Wellman & Zuck, Inc., involve economic loss arising out of a breach of agreement and inadequate design and construction. The damages alleged are not "property damage" or "bodily injury," nor are the damages the result of an "occurrence" as defined by the Policy. Thus, coverage for these damages would be precluded under section I, of the Policy. . . .
>
> Additionally, since the Complaint does not specify a date when the damages are alleged to have occurred, to the extent that any of these damages occurred outside of the policy period, no coverage would be provided.
>
> Lastly, even if there had been coverage provided under the insuring Agreement, there are exclusions that would apply to the claim.

¶7 Oregon Mutual defended Wellman and paid to settle the claims against it.[3] In November 2005, Oregon Mutual, acting on its own behalf and as Wellman's assignee, sued Hartford, alleging claims for breach of contract, bad faith, negligence, statutory violations, a Consumer Protection Act (CPA)[4] violation, attorney fees, estoppel, contribution, and subrogation. A volley of summary judgment motions followed, resulting in the trial court dismissing each of Oregon Mutual's claims against Hartford. The procedural facts follow.

¶8 In May 2006, Oregon Mutual moved for summary judgment on its claims for breach of contract, bad faith, the CPA violation, and attorney fees. On October 6, the trial court granted Oregon Mutual's motion in part, ruling that Hartford had breached its duty to defend both lawsuits in bad faith.[5] Oregon Mutual then filed a motion for partial summary judgment, arguing that Hartford could not rebut the presumption of harm arising from the trial court's bad faith ruling. Hartford filed a cross motion for summary judgment on the ground that Wellman suffered no harm from Hartford's breach because the complaints did not implicate Otis's elevator installation. On June 8, 2007, the trial court entered an order denying both the motion and the cross motion. Later, Hartford filed a motion to vacate the portion of the trial court's October 6, 2006, partial summary judgment order finding Hartford had acted in bad faith. The trial court granted Hartford's motion. Oregon Mutual filed a motion for reconsideration and clarification, which the trial court denied.

---

[3] Oregon Mutual insured Wellman under a policy effective from May 1, 1994, to May 1, 1999.

[4] Ch. 19.86 RCW.

[5] The trial court declined to rule on (1) whether Hartford's bad faith resulted in estoppel to deny coverage, (2) to what extent Oregon Mutual was entitled to damages as a result of Hartford's bad faith breach of its duty to defend, (3) whether and to what extent Oregon Mutual was entitled to damages under the CPA, or (4) whether and to what extent Oregon Mutual was entitled to attorney fees and costs under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

¶9 Oregon Mutual sought discretionary review of the trial court's order granting Hartford's motion to vacate. A commissioner of this court denied discretionary review on February 7, 2008, after finding that the petition did not meet RAP 2.3(b)'s requirements.

¶10 Back in the trial court, Hartford moved to dismiss Oregon Mutual's estoppel claim. Hartford argued that Oregon Mutual had unclean hands because it tendered the defenses to Hartford "knowing" that Otis's work did not cause the *Buchholz* and *State Farm* plaintiffs' damages. Therefore, according to Hartford, Oregon Mutual could not avail itself of this equitable remedy. The trial court granted Hartford's motion and dismissed Oregon Mutual's estoppel claim.

¶11 Oregon Mutual then moved for partial summary judgment and requested that the court rule that Hartford breached its duty to defend both lawsuits. Hartford filed a counter motion, asserting it had no such duty. The trial court granted Oregon Mutual's motion in part, ruling as a matter of law that Hartford breached its duty to defend the *Buchholz* lawsuit but that Hartford did not have a duty to defend the *State Farm* lawsuit.

¶12 Reviving its "unclean hands" argument, Hartford moved to dismiss Oregon Mutual's claim for attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*[6] The trial court granted Hartford's motion. Next, Hartford moved to dismiss all of Oregon Mutual's remaining claims. The trial court granted Hartford's motion in part, dismissing Oregon Mutual's contribution claim. In August 2010, Hartford moved to dismiss Oregon Mutual's bad faith and CPA claims. In October, the trial court granted Hartford's motion. Oregon Mutual asked the trial court to revise its ruling that Hartford did not have a duty to defend the *State Farm* lawsuit. The trial court declined to do so.

---

[6] 117 Wn.2d 37, 811 P.2d 673 (1991).

¶13 In December 2010, Hartford moved for summary judgment dismissal of Oregon Mutual's remaining breach of contract and negligence claims based on its argument that Wellman suffered no damages from Hartford's failure to defend the *Buchholz* lawsuit. In turn, Oregon Mutual moved for an order requiring Hartford to pay all *Buchholz* defense costs. On February 4, 2011, the trial court denied Oregon Mutual's motion for defense costs and granted Hartford's motion, stating, "[A]ll of Plaintiff's claims against Hartford in this matter have been Dismissed with Prejudice."

¶14 Oregon Mutual appeals the trial court's orders dismissing its claims against Hartford. Hartford cross appeals, arguing the trial court erred by finding it breached its duty to defend the *Buchholz* lawsuit.

## STANDARD OF REVIEW

¶15 We review summary judgment orders de novo, engaging in the same inquiry as the trial court.[7] Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[8] When reviewing a summary judgment order, we consider the facts and reasonable inferences from the facts in the light most favorable to the nonmoving party.[9]

## ANALYSIS

### *Duty To Defend*

¶16 Central to this appeal and cross appeal is whether Hartford breached its duty to defend the *Buchholz* and

---

[7] *Hadley v. Maxwell*, 144 Wn.2d 306, 310, 27 P.3d 600 (2001).

[8] CR 56(c).

[9] *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 381, 46 P.3d 789 (2002).

*State Farm* lawsuits. We conclude that Hartford had no duty to defend either lawsuit because no facts alleged in either complaint, if proved, would have imposed liability under the OCP policy.

¶17 An insurance company's duty to defend, which is broader than the duty to indemnify,[10] "arises at the time an action is first brought, and is based on the potential for liability."[11] A lawsuit triggers the duty to defend if the complaint against an insured alleges facts that could, if proved, impose liability upon the insured within the policy's coverage.[12] With two exceptions not applicable here, the duty to defend must be determined from the complaint.[13] "An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is 'clearly not covered by the policy.' "[14] Therefore, if the insurance policy conceivably covers the allegations in the complaint, an insurer must defend the lawsuit.[15]

¶18 We liberally construe an ambiguous complaint in the insured's favor.[16] But a complaint must "give the opposing party fair notice of what the claim is and the ground upon which it rests."[17]

¶19 The OCP policy providing liability coverage required Hartford to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." As

---

[10] *Woo*, 161 Wn.2d at 52.

[11] *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002).

[12] *Truck Ins.*, 147 Wn.2d at 760 (quoting *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999)).

[13] *Woo*, 161 Wn.2d at 53.

[14] *Woo*, 161 Wn.2d at 53 (quoting *Truck Ins.*, 147 Wn.2d at 760).

[15] *Woo*, 161 Wn.2d at 53.

[16] *Woo*, 161 Wn.2d at 53.

[17] *Lewis v. Bell*, 45 Wn. App. 192, 197, 724 P.2d 425 (1986) (citing *Williams v. Western Sur. Co.*, 6 Wn. App. 300, 492 P.2d 596 (1972)).

relevant here, the policy applies only if the property damage caused by Otis's operations at the condominiums occurred during the policy period. The policy defines "property damages" as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or . . . [l]oss of use of tangible property that is not physically injured." "Occurrence" is "an accident including continuous or repeated exposure to substantially the same general harmful conditions."

¶20 The *Buchholz* complaint generally alleged breach of the construction contract and its warranty that caused water damage. The complaint specifically alleged damage for the installation of siding, vinyl covering applied to decks, roofing and flashing, failure to install window coverings, and failure to install landscaping. The complaint made no reference to any act or omission of Otis or the elevator generally.

¶21 The *State Farm* complaint contained far fewer factual allegations. It alleged substantial delays and substantial defects in the work performed by Wellman constituting breaches of the construction contract and its warranty and causing damage to condominium unit owners. State Farm settled these claims and sought indemnification. Like the *Buchholz* complaint, this complaint made no reference to any act or omission of Otis or the elevator generally.

¶22 Even a liberal construction of these two complaints cannot support Oregon Mutual's contention that it pleaded sufficient allegations, if proved, to trigger the OCP policy's provision providing coverage for "property damage" arising out of Otis's work. The reading that Oregon Mutual urges us to adopt—that general allegations of water damage and construction defects implicates Otis's elevator installation—lies beyond the range of conceivable reasonable interpretations and is simply speculative. Additionally, under Oregon Mutual's broad reading, the complaints would implicate the work of every contractor involved in the condominiums' construction. More broadly, any complaint alleg-

ing defective performance of a construction contract, without more, would implicate the insurer for every entity providing labor or materials to the project. In short, Oregon Mutual's interpretation is unreasonable, and we decline to adopt it.

¶23 The complaints did not trigger Hartford's duty to defend. Therefore, Hartford did not breach its duty by rejecting the tenders. Although the trial court did not err by ruling that Hartford did not breach its duty to defend *State Farm*, it erred by ruling that Hartford breached its duty to defend *Buchholz*. But the trial court ultimately dismissed Oregon Mutual's claims for Hartford's alleged breaches of the duty to defend, making reversal unnecessary.

## *Bad Faith*

¶24 Oregon Mutual claims the trial court erred by dismissing its bad faith claims. An insurer has an obligation to act in good faith.[18] The failure to provide a defense may provide the basis for a bad faith claim.[19] The insured does not establish bad faith when the insurer denies coverage or fails to provide a defense based upon a reasonable interpretation of the insurance policy.[20] Because Hartford did not breach its duty to defend, the trial court did not err by dismissing Oregon Mutual's bad faith claim.

## *Estoppel*

¶25 Oregon Mutual claims that the trial court should not have dismissed its estoppel claim. If the insurer acted in bad faith, there is a presumption of harm and coverage by

---

[18] *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1986).

[19] *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 412, 229 P.3d 693 (2010) ("An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded.").

[20] *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433, 38 P.3d 322 (2002).

estoppel.[21] Therefore, a viable estoppel claim requires a finding that the defendant acted in bad faith. Because Hartford did not act in bad faith, the trial court properly dismissed Oregon Mutual's estoppel claim.[22]

*Consumer Protection Act*

¶26 We next turn to Oregon Mutual's claim that the trial court erred by dismissing its CPA claim. We review whether a party's particular actions gave rise to a CPA violation de novo, as a question of law.[23] Generally, to prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.[24] A violation of an insurance regulation constitutes an unfair trade practice, which may result in CPA liability if the remaining elements are established.[25] Further, "bad faith constitutes a per se violation of the CPA."[26]

¶27 Because Oregon Mutual cannot establish bad faith on Hartford's part, it cannot establish a per se violation of the CPA on that basis. Therefore, it must show that its claim meets the elements of the five-part test. Because Oregon Mutual cannot demonstrate injury and resulting damage, it cannot establish the fourth element. Oregon Mutual claims $5,100 in damages, which is the amount it claims it expended attempting to persuade Hartford to defend the lawsuits. In the duty to defend context, damages

---

[21] *Holly Mountain Res. Ltd. v. Westport Ins. Corp.*, 130 Wn. App. 635, 650, 104 P.3d 725 (2005).

[22] Given the resolution of this issue, we need not discuss Hartford's argument that the unclean hands doctrine precludes Oregon Mutual's estoppel claim.

[23] *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 12, 206 P.3d 1255 (2009).

[24] *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

[25] *Ledcor*, 150 Wn. App. at 12.

[26] *Ledcor*, 150 Wn. App. at 12.

may include "the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action."[27] Oregon Mutual, however, did not incur $5,100 in attorney fees defending the lawsuit. And it has not cited relevant authority demonstrating that prelitigation damages are recoverable under these circumstances. Additionally, the record does not support Oregon Mutual's arguments that Hartford violated the insurance regulations by inadequately responding to the tender of defense. For these reasons, the trial court properly dismissed Oregon Mutual's CPA claim.

## Contribution

¶28 Oregon Mutual claims entitlement to contribution. "Contribution in tort is the right of one who has paid a common liability to recover a portion of the payment from another tortfeasor who shares in that common liability."[28] "In the context of insurance law, contribution allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss."[29] Equity does not provide a right for an insurer to seek contribution from another insurer who has no obligation to the insured.[30] Oregon Mutual's contribution claim against Hartford fails.[31]

---

[27] *Kirk v. Mount Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998).

[28] *Kottler v. State*, 136 Wn.2d 437, 441, 963 P.2d 834 (1998).

[29] *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 419, 191 P.3d 866 (2008).

[30] *Mut. of Enumclaw*, 164 Wn.2d at 420.

[31] Further, Oregon Mutual did not oppose Hartford's argument below that the contribution claim be dismissed. Oregon Mutual therefore failed to raise an issue regarding contribution for trial, and the trial court did not err by dismissing the claim. *See Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

*Negligence*

¶29 A party claiming negligence must prove (1) duty, (2) breach, (3) causation, and (4) injury.[32] The parties dispute only whether Oregon Mutual raised a genuine issue of material fact regarding the fourth element. As we discussed in the context of Oregon Mutual's CPA claim, Oregon Mutual has not established that the prelitigation costs it claims as damages are recoverable for an alleged breach of the duty to defend. Therefore, Oregon Mutual did not raise a genuine issue of material fact regarding damages, and the trial court did not err by granting Hartford summary judgment on Oregon Mutual's negligence claim.

*Defense Costs*

¶30 Oregon Mutual claims that Hartford is liable for all defense costs. Damages recoverable in the failure to defend context include "(1) the amount of expenses, including reasonable attorney fees the insured incurred defending the underlying action, and (2) the amount of the judgment entered against the insured."[33] Because Hartford did not breach its duty to defend, it is not liable for any share of defense costs.

Olympic Steamship *Attorney Fees and Fees on Appeal*

¶31 Oregon Mutual claims entitlement to attorney fees on appeal and below based on *Olympic Steamship*. An insured may recover *Olympic Steamship* fees when an insurer "compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract."[34] Recovery of *Olympic Steamship* fees stands as an equitable

---

[32] *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 261, 928 P.2d 1127 (1996).

[33] *Kirk*, 134 Wn.2d at 561.

[34] *Olympic S.S.*, 117 Wn.2d at 53.

exception to the American Rule on attorney fees.[35] We review a party's entitlement to attorney fees as a question of law, de novo.[36]

¶32 Because Oregon Mutual has not prevailed on appeal, Oregon Mutual is not entitled to fees under *Olympic Steamship*. For the same reason, Oregon Mutual was not entitled to fees below. The trial court did not abuse its discretion by denying Oregon Mutual's request for fees.

*CR 11 Sanctions*

¶33 Hartford requests attorney fees on appeal under CR 11, arguing that Oregon Mutual's appeal "is not grounded in fact or warranted by law or brought in good faith." Under RAP 18.9, we may impose sanctions based on a frivolous appeal. An appeal is frivolous if it presents no debatable issues upon which reasonable minds could differ and there is no possibility of reversal.[37] We resolve all doubts regarding the frivolous nature of an appeal in favor of the appellant.[38] Resolving all doubts in Oregon Mutual's favor, we conclude that sanctions or fees are not appropriate. We decline to exercise our discretion to award fees in this case and deny Hartford's request.

## CONCLUSION

¶34 Hartford did not breach its duty to defend the *Buchholz* and *State Farm* lawsuits, and Oregon Mutual fails to raise a genuine issue of material fact regarding its

---

[35] *McRory v. N. Ins. Co. of N.Y.*, 138 Wn.2d 550, 554, 980 P.2d 736 (1999). Under the American Rule, each party pays its own attorney fees and costs unless an award of litigation costs is authorized by statute, rule, or case law. *Johnson v. Horizon Fisheries, LLC*, 148 Wn. App. 628, 633, 201 P.3d 346 (2009).

[36] *Ledcor*, 150 Wn. App. at 16.

[37] *In re Marriage of Schumacher*, 100 Wn. App. 208, 217, 997 P.2d 399 (2000).

[38] *Skinner v. Holgate*, 141 Wn. App. 840, 858, 173 P.3d 300 (2007).

other claims. The trial court did not err by granting Hartford summary judgment. We affirm.

BECKER and APPELWICK, JJ., concur.

Review denied at 176 Wn.2d 1019 (2013).