# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2013 FEB 25 AM 11:03

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

BOND SAFEGUARD INSURANCE )    NO. 67663-6-I
COMPANY, a foreign corporation, )
                            )
          Respondent, )    DIVISION ONE
                            )
      v.                      )
                            )    UNPUBLISHED OPINION
WISTERIA CORPORATION, a )
Washington corporation, and CHRIS )
HATCH and STACIE HATCH, )
husband and wife and the marital )
community composed thereof, )
                            )
          Appellants. )    FILED:  February 25, 2013
_____ )

LEACH, C.J. — Wisteria Corporation, Chris Hatch, and Stacie Hatch

(collectively Wisteria) appeal the trial court's grant of summary judgment in favor

of Bond Safeguard Insurance Company for breach of an indemnity contract and

its denial of Wisteria's motion for reconsideration.  Bond Safeguard furnished

bonds for Wisteria Corporation's timber sale contracts with the Washington State

Department of Natural Resources (DNR).  Wisteria claims that Bond Safeguard

failed to investigate properly DNR's claims before settling with the agency and

seeking indemnification.  Because Wisteria fails to show that a genuine issue of

material fact exists regarding Bond Safeguard's right to indemnification, we

affirm.

FACTS

In 2005, Wisteria Corporation, a logging company, signed two timber sale contracts—Wombat SWT[1] and Turtle Pole[2]—with DNR. Both contracts permitted Wisteria to purchase, cut, and remove certain timber by a particular date and under specific circumstances. The contracts contained similar dispute resolution provisions.

DNR required Wisteria to secure payment and performance bonds for each contract. Bond Safeguard agreed to furnish bonds on Wisteria's behalf. Wisteria signed an indemnity agreement with Bond Safeguard. With the agreement, Wisteria promised to

> indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, . . . including fees of attorneys . . . and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to the Company.

The indemnity agreement also contained a "right to settle" provision: "The Company shall have the exclusive right to determine for itself and the

---

[1] The contract authorized Wisteria to log approximately 177 acres in Skagit County.

[2] The contract authorized Wisteria to log approximately 141 acres in Kittitas County.

Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors." Additionally, in the agreement, Wisteria waived its right to receive notice of Bond Safeguard's intent to settle any claims made against the bonds.

Wisteria Corporation's contracts with DNR required DNR to approve any operations outside the designated timber sale boundaries. Before harvesting, Wisteria would mark the trees, and DNR would approve them before their removal. Under the Turtle Pole contract, after inspecting Unit #1, DNR gave Wisteria 130 pole tags, indicating approval to harvest that number of trees. On September 21, 2006, DNR issued a stop work order to Wisteria after the company failed to pay for the pole tags. On September 27, DNR notified Wisteria that although DNR approved and issued pole tags to remove 130 poles from Unit #1, Wisteria "cut and removed a total of 241 poles in Unit #1, which is an excess of 111 poles that you were not authorized to remove." At that time, DNR also suspended Wisteria's operations. On October 4, DNR sent another letter to Wisteria, effectively terminating the Turtle Pole contract for failure to comply with its terms. On March 15, 2007, DNR notified Wisteria that the company had defaulted on the Wombat SWT contract.

In December 2006, DNR demanded payment from Bond Safeguard on the Turtle Pole contract. In April 2007, DNR demanded payment on the Wombat contract from Wisteria and then demanded payment from Bond Safeguard in May after Wisteria failed to pay.

In September 2007, after Wisteria and Bond Safeguard failed to pay on the contracts, DNR filed complaints with the Washington State Insurance Commissioner and the Illinois Department of Financial and Professional Regulation, requesting action against Bond Safeguard.[3] Shortly thereafter, Bond Safeguard settled the disputes with DNR. The sum of the bonds under the Wombat contract was $22,000.00, but Bond Safeguard settled with DNR for $17,007.64. The sum of the bonds under the Turtle Pole contract was $27,000.00, and Bond Safeguard settled with DNR for that amount.

In December 2010, Bond Safeguard sued Wisteria for breach of the indemnity contract. The trial court granted Bond Safeguard's motion for summary judgment and denied Wisteria's subsequent motion for reconsideration. Wisteria appeals.

---

[3] Bond Safeguard's executive offices are located in Illinois.

STANDARD OF REVIEW

We review summary judgment orders de novo, engaging in the same inquiry as the trial court.[4] Summary judgment is proper if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[5] A genuine issue of material fact exists if reasonable minds could differ regarding the facts controlling the outcome of the litigation.[6] In reviewing summary judgment orders, we consider supporting affidavits and other admissible evidence based upon the affiant's personal knowledge.[7] "A party may not rely on mere allegations, denials, opinions, or conclusory statements but, rather must set forth specifics indicating material facts for trial."[8] We review the denial of a motion for reconsideration for abuse of discretion.[9]

ANALYSIS

Wisteria claims that Bond Safeguard is not entitled to indemnification because it failed to reasonably investigate DNR's allegations before settling with

---

[4] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794, 64 P.3d 22 (2003).

[5] CR 56(c); Michak, 148 Wn.2d at 794-95.

[6] Hulbert v. Port of Everett, 159 Wn. App. 389, 398, 245 P.3d 779, review denied, 171 Wn.2d 1024, 257 P.3d 662 (2011).

[7] Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004).

[8] Int'l Ultimate, Inc., 122 Wn. App. at 744.

[9] Brinnon Grp. v. Jefferson County, 159 Wn. App. 446, 485, 245 P.3d 789 (2011) (citing Lilly v. Lynch, 88 Wn. App. 306, 321, 945 P.2d 727 (1997)).

the agency. The parties agree that under the terms of the indemnity contract, Bond Safeguard had exclusive authority to settle with DNR. They also agree that case law limits a surety's right to settle. The parties disagree, however, on the applicable limits.

Washington law, in accord with a majority of jurisdictions, imposes upon a surety a general duty of good faith.[10] Wisteria asks us to adopt a more stringent limit on a surety's authority to settle, which it acknowledges a minority of jurisdictions follow. Under the minority rule, a surety's actions must be made in good faith and must also be reasonable.[11]

Wisteria argues that Bond Safeguard did not meet either standard because it failed to conduct a reasonable investigation into DNR's allegations that Wisteria breached the timber sale contracts before settling with the agency and seeking indemnification. Wisteria claims that "it had compelling defenses to DNR's allegations, defenses which it explained . . . to Bond Safeguard and was pursuing resolution by terms of the contract with DNR." It also alleges, "Had an

---

[10] Wellman & Zuck, Inc. v. Hartford Fire Ins. Co., 170 Wn. App. 666, 677, 285 P.3d 892 (2012), petition for review filed, No. 88066-2 (Wash. Nov. 6, 2012); see PSE Consulting, Inc. v. Frank Mercede & Sons, Inc., 267 Conn. 279, 303, 838 A.2d 135 (2004) ("'[T]he weight of authority seems to be on the side of recognizing a duty of good faith.'" (quoting Troy L. Harris, Good Faith, Suretyship, and the IUS Commune, 53 MERCER L. REV. 581, 587 (2002))).

[11] Hartford v. Tanner, 22 Kan. App. 2d 64, 76, 910 P.2d 872 (1996); see PSE Consulting, 267 Conn. at 303 n.12 ("We note that a minority of jurisdictions have appraised surety conduct under a less forgiving standard, namely, one that defines bad faith as conduct that was unreasonable or negligent.").

-6-

investigation occurred, . . . Bond Safeguard would know whether DNR's claims should or should not have been paid and/or Wisteria defenses prevail." Additionally, Wisteria asserts, "Bond Safeguard settled the claims to protect itself from regulatory sanctions calculating that it could demand reimbursement from Wisteria later."

Bond Safeguard contends, "[H]ad Bond Safeguard not brought this matter to a speedy resolution, all parties would be mired down in a morass of costly litigation with DNR that would no doubt exceed the cost of DNR's original claim." It states that it performed an "exhaustive evaluation of the contract documents, extension agreements, correspondence and telephone conversations with DNR officials and its attorneys, correspondence and telephone conversations with Wisteria and its attorneys, and internal discussions between Bond Safeguard's claims analysts and its attorneys who closely monitored the negotiations between DNR and Wisteria." Based on its investigation, it concluded that Wisteria's defenses "paled in comparison to the overwhelming evidence produced by DNR."

We do not need to address Wisteria's request for a change in the law. Regardless of whether we apply a good faith or a reasonableness standard, Wisteria's claim fails. Wisteria offers no evidence that Bond Safeguard acted either in bad faith or unreasonably when it settled with DNR.

To support its argument that Bond Safeguard did not conduct a reasonable investigation, Wisteria points to its objection to the settlement and two alleged defenses to DNR's claim that Wisteria breached the timber sale contracts. As a first defense, Wisteria contends that it did "not cut more poles than the contract provided for." It claims, "The 130 pole estimate by DNR was grossly inaccurate, Wisteria had, in fact, marked more than 240 trees." At oral argument, however, counsel for Wisteria conceded that no evidence in the record suggests that Wisteria did not breach the contracts with DNR. Counsel also conceded that the record contains no substantive evidence that DNR made a mistake when it alleged that Wisteria breached the timber sale contracts. Thus, this defense is baseless.

As a second defense, Wisteria claims that DNR did not follow the contractual dispute resolution procedure. The dispute resolution provision states,

> Unless otherwise agreed, a conference will be held by the Department Lands Steward within 30 calendar days of the receipt of Purchaser's request for review of the Region Manager's written decision. Purchaser and the Region Manager will have an opportunity to present their positions. The Department Lands Steward will issue a decision within a reasonable time of being presented with both Parties' positions.

The DNR lands steward, R. Bruce Mackey, wrote a letter to Wisteria refusing Wisteria's request for a hearing: "I . . . feel that the region has been more than reasonable in trying to find a solution to your contract default. I see no

-8-

reason to discuss this issue by phone tomorrow. I suggest you deal directly with Mr. Boyum, Southeast Region Manager." In response to Wisteria's follow-up letter to Boyum, Mackey wrote a letter to Wisteria acknowledging Wisteria's request for dispute resolution under the contract:

> It's DNR's position that the dispute resolution process was invoked by Wisteria via a letter to Bill Boyum, our Southeast Region Man[a]ger, dated October 5, 2006. An on-site meeting to discuss the matters in dispute was scheduled and occurred on October 18, 2006. On October 31, 2006, written notification outlining terms for resolution by Mr. Boyum was sent to Wisteria. According to the process outlined in the dispute resolution clauses, Wisteria could have appealed Mr. Boyum's decision to me, Lands Steward, in writing within ten business days. It wasn't until November 20, 2006, that I received a request, in writing, to meet with Wisteria.
>
> I have considered your request and believe that the dispute resolution process as required by the contract has run its course and that there are no new issues raised by your letter of November 30, 2006, that will change our position in this matter. Should you believe otherwise, DNR hereby waives any further requirements for settlement via the dispute resolution clause. Any further disputes will have to be held in a court of law.

This correspondence reveals that Wisteria, not DNR, did not comply with the contract's defined dispute resolution process. Therefore, this alleged defense is also meritless.

Wisteria cites the same letter to support its claim that Bond Safeguard did not conduct a reasonable investigation into DNR's bond claims. It also relies upon DNR's complaint to the Washington State Office of the Insurance Commissioner, which stated,

Bond Safeguard has either: (1) not adopted standards for prompt investigation of claims; (2) has adopted inadequate standards; or (3) has adopted adequate standards but failed to follow them. Bond Safeguard did not complete its investigation of this claim in 30 days. Bond Safeguard did not provide any reasonable explanation for its failure to promptly investigate.

Bond Safeguard examined the total risk and expense involved in DNR's claim and made a business decision to settle. Wisteria offers no evidence demonstrating that the expenses it would have incurred in litigating its contract defenses against DNR would have been less than the amount of the settlement, and therefore the indemnification. Most importantly, Wisteria fails to provide any evidence that further investigation would have disclosed facts supporting a defense to DNR's claims.

Wisteria also asserts that Bond Safeguard prioritized its own interest over Wisteria's to avoid regulatory sanctions. The record shows that sometime after Bond Safeguard attempted to facilitate communication between Wisteria and DNR, DNR filed complaints with the Washington State Insurance Commissioner and the Illinois Department of Financial and Professional Regulation. In Washington, DNR requested that the insurance commissioner investigate, issue a cease and desist order against, and fine Bond Safeguard, as well as suspend or revoke Bond Safeguard's registration.

Because the indemnity contract did not require Bond Safeguard to defend Wisteria, Wisteria had a responsibility to discover evidence to refute DNR's

allegations. Although approximately one year elapsed between the time that DNR first demanded payment from Wisteria and the time that Bond Safeguard settled with DNR, nothing in the record indicates that Wisteria at any point discovered or even sought to discover any facts to support its alleged defenses to DNR's claims. Wisteria's complaints about the quality of Bond Safeguard's investigation do not address Wisteria's complete failure to show that any additional investigation by Safeguard would have discovered any evidence supporting the alleged defenses.

Wisteria also claims that the trial court erred by denying its motion for reconsideration. In its motion, Wisteria argued that "the submitted documents show Bond Safeguard relying on others to determine what the claims and counterclaims were worth" and that "[b]y failing to investigate, Bond Safeguard had to settle with DNR to avoid sanctions under the insurance regulations." Because we hold that the court did not err in summarily dismissing Wisteria's claim that Bond Safeguard failed to conduct a proper investigation before settling with DNR, we also conclude that the trial court did not abuse its discretion in denying Wisteria's motion for reconsideration.

Bond Safeguard requests attorney fees and costs on appeal. The indemnity contract allows it to recover attorney fees and costs incurred "to enforce the obligation of any of the Indemnitors under this Agreement." As the

substantially prevailing party, Bond Safeguard is entitled to costs and attorney fees under RAP 14.2 and RAP 18.1.[12]

CONCLUSION

Because Wisteria fails to show a genuine issue of material fact regarding its indemnification obligation to Bond Safeguard, we affirm the trial court's summary judgment order and award costs and reasonable attorney fees to Bond Safeguard incurred on this appeal upon its compliance with RAP 18.1.

_Leach, C.J._

WE CONCUR:

_Spearman, J._          _Schindler, J._

---

[12] See Axess Int'l Ltd. v. Intercargo Ins. Co., 107 Wn. App. 713, 720, 30 P.3d 1 (2001) (holding that the rule in Olympic Steamship Co., Inc. v. Centennial Insurance Co., 117 Wn.2d 37, 811 P.2d 673 (1991), allowing an insured to recover attorney fees to obtain the benefit of an insurance contract extends to an action to recover on a surety bond).